IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:22CR541 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY SUTTON, | ) | <u>GOVERNMENT TRIAL BRIEF</u> |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through the undersigned counsel, and hereby submits this Trial Brief.   This brief is submitted in advance of certain anticipated evidentiary issues that may rise during trial.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By:   /s/ Om Kakani
Om Kakani (NY: 4337705)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3756
(216) 522-2403 (facsimile)
Om.Kakani@usdoj.gov

**Contents**

I.    OVERVIEW OF THE CASE ......................................................................4

       A.   CHARGES AS SET FORTH IN THE SUPERSEDING INDICTMENT..............4

       B.   GOVERNMENT'S THEORY OF THE CASE.............................................4

II.   ELEMENTS OF THE VIOLATIONS...........................................................6

       A.   TITLE 18, UNITED STATES CODE, SECTION 1349 – CONSPIRACY
           (COUNT 1) ......................................................................................6

           1.   Statutory language ...............................................................6

           2.   Elements of the offense........................................................7

       B.   TITLE 18, UNITED STATES CODE, SECTION 1343 – WIRE FRAUD
           (COUNTS 2 – 14).............................................................................7

           1.   Statutory language ...............................................................7

           2.   Elements of the offense........................................................8

       C.   TITLE 18, UNITED STATES CODE, SECTION 1341 – MAIL FRAUD
           (COUNTS 15 – 19)...........................................................................8

           1.   Statutory language ...............................................................8

           2.   Elements of the offense........................................................9

       D.   TITLE 18, UNITED STATES CODE, SECTION 1035 – FALSE STATEMENTS
           IN HEALTH CARE MATTERS (COUNTS 20 – 25) .........................................10

           1.   Statutory language .............................................................10

           2.   Elements of the offense......................................................11

       E.   TITLE 18, UNITED STATES CODE, SECTION 1028A(1) – AGGRAVATED
           IDENTITY THEFT (COUNTS 26 – 34)..............................................12

           1.   Statutory language .............................................................12

           2.   Elements of the offense......................................................13

III.  ANTICIPATED LEGAL ISSUES AT TRIAL................................................13

       A.   EVIDENCE OF MEDICARE LAWS, REGULATIONS, RULES AND LOCAL
           COVERAGE DETERMINATIONS ....................................................13

2

B.      CHARACTER WITNESS LIMIT AND GOVERNMENT REBUTTAL ...........15

C.      RULE 107 – ILLUSTRATIVE EVIDENCE.........................................................17

D.      EMAIL AUTHENTICATION...............................................................................21

E.      RULE 1006 – USE OF SUMMARY CHARTS TO PRESENT VOLUMINOUS INFORMATION.....................................................................................................27

F.      ADMISSIBILITY OF DEFENDANT'S OUT-OF-COURT STATEMENTS......28

      1.      Non-hearsay Statements.................................................................28

      2.      Coconspirator Statements ...........................................................29

      3.      Statements by a Party Opponent ..................................................31

G.      PROHIBITION ON SELF-SERVING HEARSAY ................................................31

H.      GOVERNMENT CHARGING DECISIONS AND UNINDICTED CO-CONSPIRATORS................................................................................................33

I.       GOVERNMENT DECISION TO NOT CALL A WITNESS...............................34

J.      PROHIBITION ON PRIOR GOOD ACTS EVIDENCE UNRELATED TO THE CHARGES.............................................................................................................35

K.      PROHIBITION ON JURY NULLIFICATION...................................................37

      1.      Evidence or Argument Blaming Medicare for Paying Claims Submitted by the Defendant or Failing to Discover the Fraud Should Be Excluded.......37

      2.      Commenting on Federal Resources ...........................................40

      3.      Potential Penalties or Consequences of a Guilty Verdict ..........................41

L.      RULE 608 AND THE LIMITS OF IMPEACHMENT .........................................42

M.      RULE 613 AND IMPROPER IMPEACHMENT WITH ANOTHER'S STATEMENT.........................................................................................................43

N.      GOVERNMENT WITNESS TESTIFYING PURSUANT TO A PLEA AGREEMENT.....................................................................................................45

IV.      MISCELLANEOUS ISSUES.................................................................................46

A.      EXPECTED LENGTH OF TRIAL/NUMBER OF WITNESSES ......................46

B.      MUTUAL AGREEMENT TO LIVE VIDEO TESTIMONY...............................47

C.      PRESENCE OF GOVERNMENT AGENTS AT TRIAL.....................................47

D.      STIPULATIONS ...................................................................................................48

I.      **OVERVIEW OF THE CASE**

A.      CHARGES AS SET FORTH IN THE SUPERSEDING INDICTMENT

Defendant Timothy Sutton is charged in the Superseding Indictment as follows: one count of Conspiracy to Commit Mail and Wire Fraud, in violation of Title 18, United States Code, Section 1349; thirteen counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343 and 2; five counts of Mail Fraud, in violation of Title 18, United States Code, Section 1341 and 2; six counts of False Statement Relating to Health Care Matters, in violation of Title 18, United States Code, Section 1035 and 2; and nine counts of Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A(1) and 2.  The defendant has pleaded not guilty to the charges set forth against him in the Superseding Indictment.

B.      GOVERNMENT'S THEORY OF THE CASE

The government submits the evidence at trial will show beyond a reasonable doubt that defendant conspired with Marc Sporn, Steven Goldberg, unindicted co-conspirator 1 (CC1) and others to defraud Medicare of money and property by submitting and causing to be submitted false and fraudulent claims for services and items that were not medically necessary, not used as part of a treatment plan, and were not the product of a legitimate doctor-patient relationship.   As charged in the Superseding Indictment, this offense occurred over several years.   Defendant Sutton was key to this scheme as he was a licensed physician in the states of Illinois, Michigan and Ohio, and further he voluntarily registered to become an authorized provider in the Medicare system.

Upon his enrollment in Medicare, Sutton was advised of his responsibility to "abide by the Medicare laws, regulations and program instructions," all of which were available through public websites, manuals, bulletins and through an assigned Medicare contractor.   Defendant also certified that as an enrolled Medicare provider he would not "knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard for their truth or falsity."  When Defendant submitted his enrollment paperwork he was advised of numerous potential federal criminal statutes and penalties that could be imposed in relation to Medicare fraud.

Sporn and Goldberg separately owned and operated various telemedicine companies all based in Florida.  Sporn, Goldberg, CC1 and others then actively recruited and established relationships with two types of registered Medicare providers.  First they sought Medicare-registered durable medical equipment (DME) providers or cancer or pharmacogenic screening (CGx or PGx) laboratories that could either supply DME or screening tests to be billed to Medicare.  Second, they contracted with physicians in various states, including Sutton when he lived and worked in Illinois, Michigan and Ohio, who were licensed to practice medicine in their respective states and registered to be Medicare providers.   The conspirators then agreed to pay physicians like Sutton to use an online portal to review and approve pre-populated medical necessity and order forms for DME and screening tests for Medicare beneficiaries in the physician's then-current state of practice.   Sutton was paid between $20 to $40 per consultation. After the physician approved the orders and signed the medical necessity forms, the conspirators then sent those forms to the DME or screening labs to provide services to the beneficiaries and then later bill Medicare.

The problem was that contrary to the claims and information in the order forms, Sutton and other physicians never actually interacted with their patients or had a prior relationship with them, nor did they perform any kind of examination, provide advice or guidance, attempt to formulate a treatment plan, or assess whether the items or services were medically necessary for the beneficiaries.  No beneficiary knew who Sutton was, nor did they have a doctor-patient relationship with, and many did not in fact need the DME or screening tests he prescribed for them. Thus, each approval was submitted based on false pretenses and misrepresentations and were used to submit claims to Medicare for payment.

For these actions, Sutton was paid per beneficiary he reviewed and approved.  That Sutton knew this conduct was illegal will be demonstrated through his own emails wherein he noticed that other doctors around the country were being charged and convicted for similar activity, but he deliberately ignored the likelihood he was engaged in similar conduct here and carried on with the scheme.  As a result of his scheme, Sutton caused in excess of $14.7 million in false and fraudulent claims to be submitted to Medicare for payment.

## II.    ELEMENTS OF THE VIOLATIONS

### A.    TITLE 18, UNITED STATES CODE, SECTION 1349 – CONSPIRACY (COUNT 1)

#### 1.    Statutory language

Count 1 of the Superseding Indictment charges defendant Timothy Sutton with the crime of Conspiracy to Commit Mail Fraud and Wire Fraud, in violation of Title 18, United States Code, 1349.

The relevant statute charged in Count 1 of the Superseding Indictment is Title 18, United States Code, Section 1349 which provides, in pertinent part:

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2.  Elements of the offense

The elements of Mail and Wire Fraud Conspiracy are:

1.  First, two or more persons conspired, or agreed, to commit the crime of Mail Fraud and Wire Fraud;

2.  Second, that the defendant knew of the conspiracy and its objects, aims, or goals;

3.  Third, that the defendant joined the conspiracy with the intent that at least one conspirator engage in conduct that satisfied the elements of Mail or Wire Fraud.

B.  TITLE 18, UNITED STATES CODE, SECTION 1343 – WIRE FRAUD (COUNTS 2 – 14)

1.  Statutory language

Counts 2-14 of the Superseding Indictment charge defendant Timothy Sutton with Wire Fraud in violation of Title 18, United States Code, Sections 1343 and 2.

The relevant statute charged in these Counts is Title 18, United States Code, Section 1343. Title 18, United States Code, Section 1343 provides, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice

shall be guilty of Wire Fraud.

Title 18, United States Code, Section 2 provides as follows:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

7

Whoever willfully causes an act to be done which if directly performed by him or
another would be an offense against the United States, is punishable as a
principal.

    2.   <u>Elements of the offense</u>

The elements of Wire Fraud are:

1.   First, that the defendant devised a scheme to defraud in order to deprive another
of money or property, that is, to defraud Medicare and to obtain money or property;

2.   Second, that the scheme included a material misrepresentation or concealment of
a material fact;

3.   Third, that the defendant had the intent to defraud; and

4.   Fourth, that the defendant used or caused another to use wire, radio or television
communications in interstate or foreign commerce in furtherance of the scheme.

The elements of Aiding and Abetting are:

1.   First, that the crime of Wire Fraud was committed;

2.   Second, that the defendant helped to commit the crime or encouraged someone
else to commit the crime; and

3.   Third, that the defendant intended to help commit or encourage the crime.

C.   <u>TITLE 18, UNITED STATES CODE, SECTION 1341 – MAIL FRAUD
(COUNTS 15 – 19)</u>

    1.   <u>Statutory language</u>

Counts 15-19 of the Superseding Indictment charge defendant Timothy Sutton with Mail
Fraud in violation of Title 18, United States Code, Sections 1341 and 2.

The relevant statute charged in these Counts is Title 18, United States Code, Section
1341.  Title 18, United States Code, Section 1341 provides, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud,
or for obtaining money or property by means of false or fraudulent pretenses,

representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing

shall be guilty of Mail Fraud.

Title 18, United States Code, Section 2 provides as follows:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2.    Elements of the offense

The elements of Mail Fraud are:

1.    First, that the defendant devised a scheme to defraud in order to deprive another of money or property, that is, to defraud Medicare and to obtain money or property;

2.    Second, that the scheme included a material misrepresentation or concealment of a material fact;

3.    Third, that the defendant had the intent to defraud; and

4.    Fourth, that the defendant used the mail or caused another to use the mail in furtherance of the scheme.

The elements of Aiding and Abetting are:

1.    First, that the crime of Mail Fraud was committed;

9

2.      Second, that the defendant helped to commit the crime or encouraged someone

else to commit the crime; and

3.      Third, that the defendant intended to help commit or encourage the crime.

.

D.      <u>TITLE 18, UNITED STATES CODE, SECTION 1035 – FALSE STATEMENTS
        IN HEALTH CARE MATTERS (COUNTS 20 – 25)</u>

1.      <u>Statutory language</u>

Counts 20-25 of the Superseding Indictment charge defendant Timothy Sutton with False

Statement Related to Health Care Matters in violation of Title 18, United States Code, Sections

1035 and 2.

The relevant statute charged in these Counts is Title 18, United States Code, Section

1035.  Title 18, United States Code, Section 1035 provides, in pertinent part:

> (a) Whoever, in any matter involving a health care benefit program, knowingly
> and willfully-
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> or
> (2) makes any materially false, fictitious, or fraudulent statements or
> representations, or makes or uses any materially false writing or document
> knowing the same to contain any materially false, fictitious, or fraudulent
> statement or entry,
> in connection with the delivery of or payment for health care benefits, items, or
> services

shall be guilty of False Statement Related to Health Care Matters.

Title 18, United States Code, Section 2 provides as follows:

> Whoever commits an offense against the United States or aids, abets, counsels,
> commands, induces or procures its commission, is punishable as a principal.

> Whoever willfully causes an act to be done which if directly performed by him or
> another would be an offense against the United States, is punishable as a
> principal.

10

2.      Elements of the offense

The elements of False Statements in Health Care Matters are:

1.      First, the defendant made or used any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry;

2.      Second, that the fact, false, fictitious, or fraud statement or representation, or false writing or document was material;

3.      Third, that the defendant did so in connection with the delivery of payment for health care benefits, items, or services involving a health care benefit program; and

4.      Fourth, that the defendant did so knowingly and willfully.

The elements of Aiding and Abetting are:

1.      First, that the crime of False Statements in Health Care Matters was committed;

2.      Second, that the defendant helped to commit the crime or encouraged someone else to commit the crime; and

3.      Third, that the defendant intended to help commit or encourage the crime.

The Sixth Circuit's Pattern Jury Instructions for false statements made to the government define the "knowingly and willfully" element as follows:

(C)  An act is done "knowingly and willfully" if it is done voluntarily and intentionally, and not because of mistake or some other innocent reason.

*See* Pattern Instruction 13.02(2)(C) (Sixth Circuit, January 1, 2024).  Nonetheless, it is the government's position that a higher, "intermediate" standard of "willfulness" applies to false statements made to the government, in the context of both 18 U.S.C. Section 1001(a)(2) and Section 1035.  (Different definitions of willfulness apply in different contexts).  Accordingly, to demonstrate willfulness with respect to the charges brought under 18 U.S.C. Sec. 1035, the government must prove that the defendant committed the act voluntarily and purposely, and with

11

knowledge that his conduct was, in a general sense, unlawful. In other words, the defendant must have acted with a bad purpose to disobey or disregard the law.  The government need not prove that the defendant was aware of the specific provision of the law that he/it is charged with violating or any other specific provision.  *See Bryan v. United States*, 524 U.S. 184, 191, 194, 196 (1988); Opposition to petition for certiorari filed on March 10, 2014, in *Russell v. United States*, No. 13-7357, United States Supreme Court (concession regarding willfulness standard by United States Solicitor General); Opposition to petition for certiorari filed on March 10, 2014, in *Ajoku v. United States*, No. 13-7263, United States Supreme Court (same).

The jury instruction submitted by the parties reflects this higher, intermediate willfulness standard.

E.     TITLE 18, UNITED STATES CODE, SECTION 1028A(1) – AGGRAVATED IDENTITY THEFT (COUNTS 26 – 34)

1.     Statutory language

Counts 26-34 of the Superseding Indictment charge defendant Timothy Sutton with Aggravated Identity Theft in violation of Title 18, United States Code, Sections 1028A(1) and 2.

The relevant statute charged in these Counts is Title 18, United States Code, Section 1028A(1).  Title 18, United States Code, Section 1028A(1) provides, in pertinent part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person

shall be guilty of Aggravated Identity Theft.

Title 18, United States Code, Section 2 provides as follows:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

12

2.    Elements of the offense

The elements of Aggravated Identity Theft are:

1.    First, that the defendant committed the felony violation of Wire Fraud, in violation of 18 U.S.C. § 1343, charged in Counts 2-10.  The violation charged in Counts 2-10 is a felony violation listed in the statute.

2.    Second, that the defendant knowingly transferred or used a means of identification of another person without lawful authority.

3.    Third, that the defendant knew the means of identification belonged to another person.

4.    Fourth, that the transfer or use was during and in relation to the felony of Wire Fraud, in violation of 18 U.S.C. § 1343, charged in Counts 2-10.

The elements of Aiding and Abetting are:

1.    First, that the crime of Aggravated Identity Theft was committed;

2.    Second, that the defendant helped to commit the crime or encouraged someone else to commit the crime; and

3.    Third, that the defendant intended to help commit or encourage the crime.

## III.    ANTICIPATED LEGAL ISSUES AT TRIAL

### A.    EVIDENCE OF MEDICARE LAWS, REGULATIONS, RULES AND LOCAL COVERAGE DETERMINATIONS

The Government submits that evidence concerning Medicare laws, regulations and Local Coverage Determinations should be admitted as relevant evidence. The Rules of Evidence favor admissibility for relevant evidence. Fed. R. Evid. 401. Relevant evidence makes a fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401. This evidence

concerning Medicare regulations and Local Coverage Determinations are relevant because they help the jury to understand Medicare rules governing claims, set forth the types of claims that are properly paid by Medicare, and assist the finders of fact in determining if the defendant acted with the intent to defraud.

Under Rule 402 of the Federal Rules of Evidence, "[a]ll relevant evidence is admissible" unless barred by the Constitution, statute, rule, or otherwise. Here, the government seeks to introduce authorities and guidance that provide the rules that providers and individuals must follow to properly submit bills to Medicare and be paid by Medicare. The failure to abide by such rules result in non-payment of claims by Medicare. A number courts have recognized that Medicare guidance, including LCDs, serves as proper evidence in health care fraud prosecutions. *See, e.g., United States v. NHML, Inc*., 225 F.3d 660, 2000 WL 420683 (6th Cir. 2000) (unpublished table decision) (district court properly "allowed Ohio state administrative regulations pertaining to Medicare and Medicaid billing by laboratories to be admitted into evidence at trial for the dual purposes of showing Appellants' intent or motive and showing evidence of Medicaid billing policies"); *United States v. Crabtree*, 878 F.3d 1274, 1288 (11th Cir. 2018) (district court properly admitted evidence relating to LCDs and instructed that "violating Medicare rules and regulations was not a crime, but that it 'may be relevant in determining whether a defendant acted with criminal intent . . . to defraud Medicare.'"); *United States v. Ruiz*, 698 F. App'x 978, 986 (11th Cir. 2017) (district court properly admitted evidence of LCDs in health care fraud prosecution).

By formulating LCDs, MACs (as contracted agents of CMS) provide prospective guidance to physicians like Sutton as to which services and procedures they will cover as a Medicare contractor. *See United States v. Anesthesia Servs. Assocs., PLLC*, No. 3:16-CV0549,

2019 WL 7372510, at *14 (M.D. Tenn. Dec. 31, 2019) ("The role of an LCD is essentially to interpret what Medicare would consider medically necessary and what documentation is needed to support reimbursement."). Sutton agreed to abide by these and other Medicare rules when he enrolled as a Medicare provider. Thus, an LCD is much like the terms of a program grant in a grant fraud case or the expectations set forth in a government contract in a procurement fraud case. *See, e.g., United States v. Se Keun Oh*, 200 F. App'x 545, 553 (6th Cir. 2006) (sufficient evidence supported wire fraud conviction where defendant fraudulently sold "to the Government brakes that he knew did not meet the contract specifications"); *United States v. Harris*, 968 F.2d 1216 (6th Cir. 1992) (evidence sufficient to sustain fraud conviction where defendant "knowingly improperly used glue when it was not specified in the contract, directed his subordinates to hide the glue, and violated the contract by repairing defective housings"); *United States v. Lyon*, 751 F. App'x 359, 363 (4th Cir. 2018) (evidence sufficient to sustain "fraud convictions based on his fraudulent certifications that the project was proceeding according to contract specifications"); *United States v. Williams*, 527 F.3d 1235, 1244–45 (11th Cir. 2008) (sufficient evidence supported wire fraud conviction where grant rules "mandate[d] that [the defendant's company] keep detailed records tracking the expenditure of grant money to ensure that grant funds were spent only on approved program costs"); *United States v. Leahy*, 82 F.3d 624, 634 (5th Cir. 1996) (sufficient evidence to sustain wire fraud conviction where "defendants submitted fraudulent invoices to the VA" in connection with government contract).

B.     CHARACTER WITNESS LIMIT AND GOVERNMENT REBUTTAL

The Government anticipates that Defendant will call multiple character witnesses.  It is within the Court's discretion to limit the number of character witnesses a party calls at trial. *See United States v. Sexton,* 119 Fed. Appx. 735, 745 (6th Cir. 2005) (finding that the district court did not err in limiting the number of character witnesses as "[f]urther witnesses testifying

to these matters would have been redundant"); *see also Michelson v. U.S.,* 335 U.S. 469, 480 (1948) (stating that "courts of last resort sought to overcome danger that the true issues will be obscured and confused by investing the trial court with discretion to limit the number of such witnesses and to control cross-examination").  Similarly, in this case, the Government requests the Court limit such number to avoid redundancy and confusion of the issues.

To the extent the Court permits such evidence, the Government will introduce evidence to rebut assertions of good character.  "Once the defendant has 'opened the door' by offering evidence as to his good character, the prosecution may rebut that evidence."  *United States v. Clark*, 26 F. App'x 422, 427 (6th Cir. 2001) (citing *United States v. McGuire*, 744 F.2d 1197, 1204 (6th Cir. 1984)).  The Supreme Court has long cautioned defendants:

> The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.  The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat – for it is not the man that he is, but the name that he has which is put in issue.  Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion. It may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate.  Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.

*United States v. Michelson*, 335 U.S. 469, 479 (1948).

Thus, while Defendant is limited to opinion and reputation testimony to prove character, the government may rebut that evidence through cross-examination of defense witnesses about specific instances of conduct and through testimony of character witnesses.  *Id*.

If Defendant put forth evidence of good conduct, the government intends to rebut such

evidence through all means permissible under the Federal Rules of Evidence.

      C.     <u>RULE 107 – ILLUSTRATIVE EVIDENCE</u>

      Demonstrative (or illustrative) evidence is admissible for the purpose of illustrating and

clarifying a witness's testimony. *Boykin v. Western Express, Inc*., 2016 WL 8710481, at *5

(S.D.N.Y. Feb. 5, 2016) (citing 5-900 Weinstein's Federal Evidence §900.07). More specifically,

the term demonstrative is used "to refer to an object or document that could be displayed to the

jurors to help them understand the substantive evidence (testimony or other objects or

documents) by interpreting, summarizing, or explaining it, but that would not be available during

deliberations as substantive evidence." *Id*. (citing 4-611 Weinstein's Federal Evidence § 611.02).

Moreover, "the decision whether to admit [demonstrative evidence] is a matter left to the sound

discretion of the trial judge." *Veliz v. Crown Lift Trucks*, 714 F. Supp. 49 (E.D.N.Y. 1989);

*Martin v. Nat'l R.R. Passenger Corp*., 1998 WL 575183, at *2 (S.D.N.Y. Sept. 9, 1998) ("Fed.

R. Evid. 611 grants the court discretion to admit demonstrative evidence that would aid the jury

in its consideration of the evidence."); *Riddle v. Mem'l Hosp.*, 43 A.D.2d 750, 750 (3d Dep't

1973) ("The admission or the exclusion of real or demonstrative evidence rests largely within the

discretion of the trial court and the relevancy and value of such evidence in assisting the jury in

understanding the issues of the case are the criteria for its admission or rejection.").

      At trial, the government plans to present various videos depicting how the RealTime

portal functioned.  These videos will be introduced through, and explained by, individuals who at

a certain time worked for RealTime, including those separately charged for their role in the

scheme.  These videos are not videos directly related to defendant, but are illustrative of how the

RealTime portal functioned and in particular what a referring or ordering physician would see

during the course of approving CGx, PGx or DME orders.   Additionally, in the course of the

conspiracy defendant is believed to have approved thousands of DME, CGx and PGx orders. The government has explored printing the entirety of these orders as a collective exhibit, however to do so would create an exhibit in excess of 38,000 pages and requiring over 75 standard reams of paper.  However, presenting the records on a thumbdrive minimizes the scale of defendant's activities.  The Government plans to present, as an illustrative aid and to provide context, the physical equivalent of those orders.

The proposed exhibits should be deemed admissible as "demonstrative evidence," under Rule 611(a), which, under the amended rules, is now better described as "illustrative aids" governed by Rule 107. The amended Rule 107 provides, "[t]he court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." Fed. R. Evid. 107(a). Here, the videos might illuminate the record and assist the jury and Court in understanding the issues of the case, that is, how the RealTime Portal functioned.

Support for this proposition is also found in the analogous case of *United States v. Buchanan*, 213 F.3d 302 (6th Cir. 2000), where a government witness with expert knowledge of the inner workings of the drug-trafficking trade testified about the way in which drug dealers packaged and distributed narcotics. To illustrate the testimony, the government marked for identification purposes actual packages of powder cocaine and crack cocaine. These packages were never introduced into evidence but were seen by the jury. Immediately after each package was identified, the government, through questioning, established that the drugs exhibited were not seized from the defendants in this case.  213 F.3d at 312.  Here an agent or other witness with knowledge of how the telemedicine fraud scheme can use the videos to explain how the portal

functioned and further an experienced agent can demonstrate the volume of orders created by

defendant.

      D.    <u>SELF-AUTHENTICATING DOCUMENTS</u>

      The Government intends to offer a large number of business records as evidence in this case.

Business records are admissible under Rule 803(6) of the Federal Rules of Evidence, notwithstanding

the hearsay rule and regardless of the availability of the declarant, as follows:

> **Hearsay Exceptions; Availability of Declarant Immaterial**
> The following are not excluded by the hearsay rule, even though the declarant
> is available as a witness:
> * * * *
> **(6) Records of regularly conducted activity.** A memorandum, report,
> record, or data compilation, in any form, of acts, events, conditions, opinions,
> or diagnoses, made at or near the time by, or from information transmitted by,
> a person with knowledge, if kept in the course of a regularly conducted
> business activity, if it was the regular practice of that business activity to
> make the memorandum, report, record, or data compilation, all as shown by
> the testimony of the custodian or other qualified witness, or by certification
> that complies with Rule 902(11), Rule 902(12), or a statute permitting
> certification, unless the source of the information or the method or
> circumstances of the preparation indicate lack of trustworthiness. The term
> Abusiness@ as used in this paragraph includes business, institution,
> association, profession, occupation, and calling of every kind, whether or not
> conducted for profit.

Rule 803(6) of the Federal Rules of Evidence. The business record exception to the hearsay rule is

available when (1) the evidence was made in the course of a regularly conducted business activity;

(2) the evidence was kept in the regular course of that business; (3) the regular practice of the

business was to make the memorandum, etc., and (4) the memorandum, etc., was made by a person

with knowledge or from information transmitted by a person with knowledge. *United States v.*

*Fawaz*, 881 F.2d 259, 266 (6th Cir. 1989). The witness through whom the records are offered "need

not be in control of or have individual knowledge of the particular corporate records . . ., but need

only be familiar with the company=s record-keeping practices." *United States v. Weinstock*, 153 F.3d

272, 276 (6th Cir. 1998) (*quoting In re Custodian of Records of Varsity Distrib., Inc.*, 927 F.2d 244,

248 (6th Cir. 1991)). Thus, the rule is broad enough to allow for the admission of computer-generated records if the requirements of the rule are otherwise met. *Weinstock*, 153 F.3d at 276.

Rule 902(11) of the Federal Rules of Evidence permits the authentication of business records with an out-of-court certification, rather than requiring the testimony of a record custodian at trial.  Rule 902(11) states:

> **Self-authentication**
> Extrinsic evidence of authenticity . . .
> * * * *
> **(11) Certified domestic records of regularly conducted activity.** The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record C
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
> (B) was kept in the course of the regularly conducted activity; and
> (C) was made by the regularly conducted activity as a regular practice.
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Rule 902(11) of the Federal Rules of Evidence. Federal Rule of Evidence 902(11) provides that documents that would be admissible as a business record may be authenticated without a witness "if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record--(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice."

The Government has obtained certifications for all of its business and public records, provided them to defense counsel in discovery and notified counsel of its intent to proceed to trial without calling custodians of records as to those documents. By providing these records well in advance of trial, the Government provided the defendants a fair opportunity to challenge them. The Government has received no objection.

Finally, the government has previously served notice regarding the authentication of digital evidence pursuant to Rule 902(14).   This matter was briefed and noticed in the Government's earlier filing, which is reincorporated herein.  See ECF 46.

E.       EMAIL AUTHENTICATION

The Government will authenticate emails obtained in the course of the investigation. These emails were obtained through: a) subpoenas to companies and accompanied by affidavits executed under FRE 902(11) and 803(6); b) lawfully-issued and executed search warrants served on internet service providers and accompanied by 902(11) and 803(6) affidavits; c) a lawfully-issued and executed search warrant on Defendant Sutton's home; and d) from witnesses who were participants in the conversations.   For the reasons that follow, courts have routinely held that this evidence is admissible under the Federal Rules of Evidence.

Federal Rule of Evidence 901 provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The proponent's burden "is not high—only a prima facie showing is required, and a district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *United States v. Cornell,* 780 F. 3d 616, 629 (4th Cir. 2015) (internal citation and quotation omitted). *See also United States v. Fluker,* 698 F.3d 988, 999 (7th Cir. 2012) ("Only a prima

facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury.").

"Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court." *United States v. Thomas*, 921 F.2d 277, at *4 (6th Cir. 1990) (table opinion) (citations omitted). "The only requirement is that there has been substantial evidence from which they could infer that the document is authentic." *Id.*, quoting *United States v. Jardina*, 747 F.2d 945, 951 (5th Cir. 1984); *see also United States v. Carriger,* 592 F.2d 312, 316 (6th Cir. 1979) (concluding "that the district court erred in requiring further authentication of the promissory notes").

Courts have allowed emails to be authenticated by circumstantial evidence when an email from a defendant cannot be directly authenticated through testimony. The Sixth Circuit has upheld the admission of a document authenticated circumstantially from the contents of the document as contemplated in Rule 901(b)(4). *See United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997). The Eleventh Circuit has held that*,* "[t]he government may authenticate a document solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." *United States v. Siddiqui,* 235 F.3d 1318 (11th Cir. 2000) (*quoting United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990) and *citing Hicks v. United States*, 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991). In *Siddiqui*, the court applied the provisions of rule 901(b)(4) to affirm the district court's admission of the defendant's emails at trial based on the subject emails bearing the defendant's email address, the content of the emails reflecting detailed information regarding the relevant conduct, and the emails depicting the author in defendant's nickname of "Mo." *Id.* at 1322-1323.

Other circuits have adopted and followed the Eleventh Circuit's circumstantial approach to the authentication of emails.

The court's analysis in *Siddiqui* regarding the circumstantial authentication of e-mails into evidence at trial has proven instructive for other courts. In *United States v. Vaghari*, No. 08-693-01-02, 2009 WL 2245097 (at *8)(E.D. Pa. July 27, 2009), the District Court for the Eastern District of Pennsylvania applied Rule 901(a) to permit the introduction of e-mails based on said e-mails bearing the defendant's name and e-mail address and the fact that hard-copies were obtained from defendant's apartment. In so holding, the *Vaghari* court noted, "[o]ther courts have authenticated e-mails in this manner, relying on e-mail addresses in the headers, explanation in the body of the e-mails, defendant's conduct after receiving the e-mails, and other circumstantial evidence." *Id.* (*citing United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) and *United States v. Safavian*, 435 F. Supp. 2d 36, 39-42 (D.D.C. 2006)). Further, the Seventh Circuit addressed e-mails which were impossible to authenticate under Rule 901(b)(1) as neither the author nor anyone who saw the author compose the e-mails testified at trial. *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012). The *Fluker* court specifically relied on the email addresses used, as they appeared on the subject e-mails, and the extent of the author's knowledge of the relevant events. 698 F.3d at 1000.

Courts have consistently held that if law enforcement recovers a cell phone from the defendant, and the phone contains information tying it to the defendant, then the text messages recovered from that phone may be authenticated and attributed to the defendant. *See, e.g.*, *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (text messages from Samsung cell phone properly authenticated where (1) police seized cell phone from defendant's room, (2) phone contained contact information for the defendant's former employer, and (3) defendant had

previously used the phone to arrange gun sale to confidential informant); *United States v. Mebrtatu*, 543 F.App'x. 137, 140–41 (3d Cir. 2013) (text messages from cell phone properly authenticated where police seized phone from defendant's person, and texts recovered from the phone addressed the defendant and her co-defendants by name); *United States v. Ellis*, No. 12-CR-20228, 2013 WL 2285457, at *1 (E.D. Mich., May 23, 2013) (text messages from cell phone properly authenticated as being authored by defendant where (1) the phone was recovered from the defendant's person, (2) the phone contained pictures of the defendant and his car, (3) the phone contained contacts for the defendant's brother and girlfriend, and (4) the phone contained texts addressed to the defendant by name); *United States v. Benford*, No. CR-14-321-D, 2015 WL 631089, at *4–6 (W.D. Okla., Feb. 12, 2015) (text messages properly authenticated as being authored by defendant where (1) the phone was recovered from defendant's person, (2) defendant provided police with passcode to unlock phone, (3) and text messages on phone contain monikers that identify defendant).

Here, there is ample evidence to authenticate the email messages:  1) HHS-OIG agents discovered print-out copies of the emails in a lawfully-issued and executed warrant on Sutton's home; 2) the print-out emails match those Defendant sent in response to inquiries to Humana investigators; and 3) the emails also refer to co-conspirators directly either by name or by reference to specific aspects of the conspiracy.  Thus there is sufficient evidence to authenticate the email communications under Rule of Evidence 901(a). *See, e.g., State v. Gibson*, 2015 WL 1962850 (6th Dist. Lucas No. L-13-1222, 2015-Ohio-1679) (Facebook account authenticated based on terms used in profile, gang names, gang affiliations, and consistent location information); *United States v. Brown*, 801 F.3d 679 (6th Cir. 2015) (drug ledger properly authenticated based on objects found near the ledger); *United States v. Shrout*, 298 Fed. Appx.

479 (6th Cir. 2008) (planner properly authenticated based on the consistent placement of name and address across a planner and entries that reflect information independently known about the individual's business practices and daily activities).

Additionally, there are no hearsay concerns regarding the content of the authenticated emails—regardless of source and authentication method—because the statements in the emails are non-hearsay statements under Rule 801(d)(2) of the Federal Rules of Evidence. Specifically, the contents are non-hearsay statements of a party opponent or a co-conspirator's statement during and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(A), (d)(2)(E).

In the present case, the Government anticipates seeking the introduction of numerous emails in which defendant is a party. In the absence of a stipulation, it will be difficult, if not impossible, to authenticate these communications fully due to the fact that Defendant, if he testifies at all, will not testify during the Government's case in chief.

F.     AUTHENTICATION OF INTERNET WEBSITES FOUND IN SUTTON'S COMPUTER

Similarly, the government anticipates seeking to introduce evidence of certain internet websites visited on Defendant's computer and seized from his residence. It has asked Defendant to stipulate to the authenticity of the documents reflecting those searches, but in the absence of the requested stipulation, it will be difficult, if not impossible, to authenticate through direct evidence the documents reflecting the internet history since Defendant will not testify during the government's case-in-chief.

As outlined above, Federal Rules of Evidence 901(a) and 901(a)(4) permit authentication based on circumstantial evidence, and support authentication of the internet history evidence in this case. The Sixth Circuit's opinion in *United States v. Edington*, 526 F. App'x 584 (6th Cir. 2013), is instructive. There, the defendant argued that pornographic videos admitted at trial were

not properly authenticated, focusing on whether the government had shown that the videos depicted actual children. *Id.* at 591. Noting that the authentication question was whether the video was something the defendant received or possessed, the Court held that that "could be done by offering testimony from an investigator who was present when the video was retrieved and can describe the process used to retrieve it." *Id.*

Likewise, here, a computer forensic agent and a special agent will testify that the evidence in question is from internet-website searches made on Sutton's computer which was located in his residence. Moreover, the content of his browsing history is directly related to the charged conduct, as it covered his visits to the Realtime portal and the fact that he saved his login information for that portal, which provides further authentication that Sutton made the searches in question. *See United States v. Lundergan*, 2019 WL 4125618 at *2 (E.D. Ky. Aug. 29, 2019) (agent testimony that he received emails from Mr. Emmons in response to a subpoena, that those emails reflected they had been sent to and from Mr. Emmons' email account, the contents of the emails, and the circumstances in which they were discovered established authenticity); *Fluker*, 698 F.3d at 998-1000 (citing the email addresses at issue and the content of the communication to establish authenticity); *Siddiqui*, 235 F.3d at 1322-23 (admission based, in part, on the content of the emails reflecting detailed information regarding the relevant conduct).

Therefore, the government will seek to introduce, through circumstantial authentication, the Defendant's internet history including saved passwords in relation to the charges set forth in the Superseding Indictment, relying on the source of those searches and the relation of the content to the charges in this case.

G.     RULE 1006 – USE OF SUMMARY CHARTS TO PRESENT VOLUMINOUS
       INFORMATION

The Court is aware that the Indictment charges a conspiracy that spanned several years. It

involved numerous orders and beneficiaries. To present this evidence in an efficient and

organized way, the Government is preparing summary charts, which will depict, among other

things, the number of orders Sutton authorized overall, the time it took him to review and

authorize those orders, and the number of braces ordered for specific beneficiaries.

These summary charts are themselves admissible evidence under Federal Rule of

Evidence 1006, and the Government will seek to admit them as substantive evidence, which the

jury can reference during deliberations. Federal Rule of Evidence 1006 permits for such use of

summary charts, by providing that "contents of voluminous writings, recordings, or photographs

which cannot conveniently be examined in court may be presented in the form of a chart,

summary, or calculation." The use of summary materials in this fashion has been approved by

the Sixth Circuit. *See United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998). The

Government will also include in its proposed jury instructions, the Sixth Circuit's pattern jury

instruction 7.12.

The summary charts will accurately depict the evidence to be presented to the jury and

will streamline the trial considerably by condensing numerous of exhibits into a handful of

summary charts. For each summary chart the Government anticipates using at trial, the

Government has complied with Rule 1006 by providing the underlying documents to Defendant

and/or making the underlying documents available for examination and copying in advance of

the Court's discovery deadline. Furthermore, the Government will provide the charts to

Defendant in advance of trial.

H.       ADMISSIBILITY OF DEFENDANT'S OUT-OF-COURT STATEMENTS

The United States intends to offer out-of-court statements made by the Defendant. These statements will be admissible under one or more of the following theories: (1) the statements are non-hearsay; (2) the statements were made by a coconspirator pursuant to Federal Rule of Evidence 801(d)(2)(E); (3) the statements were made by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2); or (4) the statements are subject to another specific hearsay exception.[1]

1.       Non-hearsay Statements

A large portion of the defendant's out-of-court statements are not subject to the rule against hearsay because they are not being offered for the truth of the matter asserted. Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted. *See United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995). As such, an out-of-court statement is not hearsay if (1) it does not contain an assertion, *see United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003), or (2) it is not offered to prove the truth of what it asserts, *see United States v. Rodriguez-Lopez*, 565 F.3d 312, 314–15 (6th Cir. 2009).

Likewise, statements introduced to prove their falsity, rather than the truth of what they assert, do not implicate the rule against hearsay or the Confrontation Clause. *See United States v. Porter*, No. 17-5064 at 5–6 (6th Cir. 2018) (per curiam) (recommended for full text publication), *available at* http://www.opn.ca6.uscourts.gov/opinions.pdf/18a0061p-06.pdf. Statements that consist solely of questions or commands are not hearsay because they do not contain assertions.

---

[1] Given the vast number of statements involved in this case, this section is not intended as an exhaustive list of every out-of-court statement that may be introduced by the United States at trial. Rather, this section is intended to outline the legal theories the United States intends to rely on for admitting the statements.

*See Rodriguez-Lopez*, 565 F.3d at 314. And other statements will be admissible to provide context to related evidence in the case. *See United States v. Henderson*, 626 F.3d 326 (6th Cir. 2010) (holding that a non-party's half of a conversation with defendant was not hearsay, because it was admissible as context for the defendant's half).

Finally, many of the defendant's out-of-court statements, such as the solicitation and acceptance of bribes, qualify as verbal acts that are not subject to the hearsay rule. "A verbal act is an utterance of an operative fact that gives rise to legal consequences." 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.11(3) (2012). For verbal acts, "[i]t is the fact that the declaration was made, and not the truth of the declaration, which is relevant." *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008). Thus, where a statement directs the formation and operation of a conspiracy, illegally solicits someone else to perform an act, or puts forward a bribe, that statement is not barred by the hearsay rules, regardless of the truth or falsity of its assertion. *See United States v. Forfana*, 543 F. App'x. 578, 580 (6th Cir. 2013) ("words used to offer a bribe amount to 'verbal acts' with their own legal significance and do not qualify as hearsay").

### 2.    Coconspirator Statements

Many of the defendant's statements, including the bulk of the text messages that the United States intends to offer from Hogan's phone, will be admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E). Under that rule, an out-of-court statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). The proponent must show by a preponderance of evidence that: (1) a conspiracy existed; (2) the defendant against whom the statement is offered was a member of the conspiracy; and (3) the statement was made during and in furtherance of the conspiracy. *See United States v. Enright*, 579 F.2d 980, 986 (6th Cir. 1978). The court may consider the underlying statements themselves in determining whether this hearsay exception

applies. *See Bourjaily v. United States*, 483 U.S. 171, 176–81 (1987). The court may also conditionally admit coconspirator statements subject to a later determination of their admissibility. *See Enright*, 579 F.2d at 983–87. *See also United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002). The coconspirator hearsay exception does not depend on whether the government specifically charged the conspiracy or the involved coconspirators. *See United States Franklin*, 415 F.3d 537 (6th Cir. 2005).

A statement is "in furtherance of the conspiracy" if it was intended to promote the objectives of the conspiracy. *United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997). However, statements made "in furtherance of the conspiracy" can take many forms and be susceptible to many interpretations. *See United States v. Tocco*, 20 F.3d 401, 419 (6th Cir. 2000). Indeed, there is no requirement that the coconspirator's statement be "exclusively, or even primarily, made to further the conspiracy." *See id.* (quoting *United States v. Doerr*, 886 F.2d 944, 951–52 (7th Cir. 1989)).

The Sixth Circuit has held that the following types of statements qualify as being "in furtherance of the conspiracy": statements that keep coconspirators apprised of others' activities, *see United States v. Kelsor*, 665 F.3d 684, 694 (6th Cir. 2011), statements that allay the fears of other coconspirators, *see Monus*, 128 F.3d at 392–93, statements that "prompt a listener to act in a manner that facilitates the carrying out of the conspiracy," *see United States v. Jerkins*, 871 F.2d 598, 606 (6th Cir. 1989), statements made the day after a truck robbery was completed that explained what happened, who participated, how the stolen money would be distributed, and warned the coconspirator not to get caught, *see Franklin*, 415 F.3d at 551–53, conversations designed to collect money, *see United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982), statements made to potential recruits to solicit their participation, *see United States v. Holloway*,

740 F.2d 1373, 1376 (6th Cir. 1984), and statements that "identify participants and their roles in the conspiracy," *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994).

For example, a witness in this case was told by Clark that he had someone on the inside at MCLB Albany that was proving him the government estimate for certain projects. This statement would meet all three elements of a coconspirator statement under Federal Rule of Evidence 801(d)(2)(E) because: (1) the defendant was engaged in a conspiracy that included sending Latham a stream of benefits in exchange for official actions in his position with the Navy; (2) the statement is being offered against the individuals in the conspiracy (Clark and Latham); and (3) the statement was made during and in furtherance of the conspiracy, as it kept the coconspirators apprised of the manner in which Clark was obtaining the numbers to bid on contracts at MCLB Albany and further promoted the coconspirators objective of reaping the benefits of their illicit scheme.

### 3. Statements by a Party Opponent

In addition to the exceptions cited above, the Defendant's own statements are admissible against him personally under Federal Rule of Evidence 801(d)(2)(A) as statements made by a party opponent. Fed. R. Evid. 801(d)(2)(A); *United States v. Matlock*, 415 U.S. 164, 172 (1974). Other statements may qualify as adoptive admissions under Rule 801(d)(2)(B) if the defendant "manifested an adoption or belief in the statements' truth." *See United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006); *United States v. Safavian*, 435 F. Supp. 2d 36, 43–44 (D. D.C. 2006) (ruling that emails authored by defendant may be admissible as statements by a party opponent, and emails forwarded by defendant may be admissible as adoptive admissions).

### I. PROHIBITION ON SELF-SERVING HEARSAY

The defendant should be precluded from offering an out-of-court statements that are self-serving hearsay. The Government anticipates that the defendant will attempt to introduce his own

statements, emails, or text messages. The rule against admitting hearsay creates an exemption for statements made by and offered against opposing parties. Fed. R. Evid. 801(d)(2). However, the coverage of this exemption is limited. It does not apply to a party introducing their own statements through other witnesses. It does not cover statements made by the defendant and offered by the defendant. *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014); *United States v. Henderson*, 626 F.3d 326, 344 (6th Cir. 2010). "[S]uch statements are classic, self-serving inadmissible hearsay. It is well accepted that a party's own statement is admissible as non-hearsay only if it is offered against that party." *United States v. Bravata*, No. 11-CR-20314, 2013 WL 692955, at *1 (E.D. Mich. Feb. 26, 2013) (citing *Stalbosky v. Belew*, 205 F.3d 890, 94 (6th Cir.2000)). "In the criminal context, a self-serving statement is one that tends to reduce the charges or mitigate the punishment for which the declarant might be liable." *Williamson v. United States*, 512 U.S. 594, 618 (1994) (concurrence). Such statements are excluded as self-serving hearsay. If the defendant wishes to introduce his own statements, he has the opportunity to testify. *Ford*, 761 F.3d at 652. The defendant cannot introduce his own self-serving statements because they are hearsay.

Additionally, the Government introducing the defendant's statements does not open the door to allow the defendant to introduce other statements. The Rule of Completeness is not implicated in these cases. That Rule is meant to correct misleading impressions by introducing the full writing for context. *Id*. It is not meant to allow in otherwise inadmissible evidence. *Id*. Any self-serving hearsay statements would be inadmissible. The defendant cannot use the Rule of Completeness to admit inadmissible statements. As the Sixth Circuit has observed, "[c]ompleteness, a common-law doctrine, does not outweigh the hearsay rules, because '[h]earsay is not admissible except as provided *by these rules* or other rules prescribed by the

Supreme Court pursuant to statutory authority.' FED. R. EVID. 802 (emphasis added)." *United States v. Shaver*, 89 Fed. Appx. 529, 533 (6th Cir. 2004).

    J.    <u>GOVERNMENT CHARGING DECISIONS AND UNINDICTED CO-CONSPIRATORS</u>

    Additionally, the defendant should be precluded from making statements concerning uncharged co-conspirators or the Government's charging decisions. These statements would have no probative value and should be excluded. A selective-prosecution claim would be improper here because it is not "a defense on the merits to the criminal charge itself." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The Government has discretion in charging. *Id*. at 463-64. The sole issue before the jury is whether defendant is guilty of the crimes charged against him. Arguments at trial should therefore focus on that issue and that issue only. *See United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (holding selective prosecution defense to be "an issue for the court rather than the jury," and finding no abuse of discretion in district court's precluding the defense from making selective prosecution claim in closing argument). Any argument concerning the Government's charging decisions would be irrelevant and lead to jury nullification.

    For that reason, courts regularly prohibit defendants from arguing at trial that they were unfairly selected for prosecution. *See, e.g.*, *United States v. Abboud*, 438 F.3d 554, 579–80 (6th Cir. 2006) (district court correctly precluded defendants from arguing at trial that "they were targeted because of their Arab descent in the post-September 11 landscape"); *United States v. Simpson*, 226 Fed. Appx. 556, 562–63 (6th Cir. 2007) (district court correctly precluded defendant from arguing at trial that the government initiated prosecution because defendant had previously filed a civil rights lawsuit against the AUSA's father). Therefore, the Court should

prohibit the defendant in this case from presenting any argument or evidence that he was unfairly selected for prosecution.

Relatedly, the defendant should also be prohibited from arguing that he ought to be acquitted because the United States declined to charge every individual involved in the offense. Why the United States chose to charge defendant, and not others, is completely irrelevant to the determination of guilt or innocence at trial. *See Simpson*, 226 Fed. Appx at 562–63. This type of argument would be completely irrelevant under Federal Rule of Evidence 401 and would serve only to distract the jury from the relevant evidence in the case.

Thus, because arguments about selective prosecution and why only certain individuals were charged are irrelevant, the Court should prohibit the Defendant from raising those types of arguments at trial.

### K.  GOVERNMENT DECISION TO NOT CALL A WITNESS

The Government moves *in limine* to prevent the defendant from commenting or asking the jury to draw a negative inference from the Government's decision to not call particular individuals to testify. Such evidence is irrelevant. The Confrontation Clause of the Sixth Amendment does not "impose upon the Government the duty to call a particular witness." *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972). The Government has "wide discretion" to call or not call witnesses as part of its case. *Id*. The Government in this case interviewed numerous witnesses as part of the investigation. However, the Government does not intend on calling every possible witness. It is within the Government's discretion to call or not call those witnesses. The defendant additionally has access to these witnesses and may exercise his own subpoena power to call them. "If a witness is 'equally available' to both the Government and a defendant, then no 'unfavorable inference against the government could be drawn from its failure to call [the] witness.'" *United States v. Smith*, 2019 WL 4281908, *2 (M.D. Ala. Sept. 10,

2019) (*citing Luttrell v. United States*, 320 F.2d 462, 465 (5th Cir. 1963)). The Government does not intend to call every conceivable witness and the defense has the power to subpoena its own witnesses.

> L.   PROHIBITION ON PRIOR GOOD ACTS EVIDENCE UNRELATED TO THE CHARGES

The Government anticipates that the defendant may try to introduce irrelevant evidence of specific acts of good conduct to argue that it was not his intent to defraud the United States. Such evidence is irrelevant and should be precluded. Evidence of good conduct has no bearing on the defendant's guilt or innocence because prior good acts are not a defense to criminal charges, "[f]or the same reason that prior 'bad acts' may not be used to show predisposition to commit crimes[.]" *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (holding that the district court correctly precluded defendant, a public official charged with accepting bribes, from offering evidence "that on several occasions he helped constituents without asking for . . . or receiving anything of value"). *See also United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) (holding that a defendant's good acts are irrelevant to their defense because "[e]vidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable").

This general ban on "good acts" is reinforced by Rules 404 and 405 of the Federal Rules of Evidence. Rule 404(a) prohibits introducing "evidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." And on the rare occasions where character evidence is admissible, Rule 405(a) provides that character evidence may proven only "by testimony about the person's reputation or by testimony in the form of an opinion." Evidence of specific "good acts" would essentially provide defendants with a backdoor way of violating Rule 405(a), by proving character through specific

instances of past conduct. *See United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) (holding that district court erred when it allowed defendant charged with accepting bribes from meat plants to introduce testimony from individuals at meat plants who did not pay bribes to the defendant).

Evidence of other acts to prove a person's character is not permitted. Fed. R. Evid. 404. "A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions." *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955); *see also Dimora,* 750 F.3d at 630 ("For the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes."); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (excluding defendant from offering evidence of legitimate billings in a false claims act case because it was irrelevant that the defendant "did not overcharge in every instance in which she had the opportunity to do so"). Evidence of a defendant's "good" behavior is admissible only if it comports with the specific requirements of Rules 404 and 405 of the Federal Rules of Evidence, with such evidence not being admissible to negate criminal intent. *Herzog*, 226 F.2d at 565; *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.").

Although Rule 405(a) of the Federal Rules of Evidence does allow for evidence of an individual's character or character trait, the evidence, if pertinent, must take the form of reputation or opinion testimony. The evidence cannot detail specific acts or courses of conduct. The sole exception to this rule occurs when the character trait is an essential element of the indictment. Fed. R. Evid. 405(b). *United States v. Silber*, 456 F. App'x 559, 562 (6th Cir. 2012) (unpublished) (prohibiting character evidence in the form of specific instances of good conduct

36

in a health care fraud cause because character or character trait is not an essential element.) In *Silber*, the court noted the defendant's "attempt to establish his character for honesty by showing that Medicare had not previously noticed any overbillings from him was, if anything, even more ham-handed: rather than calling others to testify to specific instances in which he had not behaved dishonestly, he attempted to do so himself. The court properly excluded the testimony." *Id*.  Moreover, defendant's character is not an essential element of the charges set forth in the Indictment, and the narrow exception found in Rule 405(b) is inapplicable here.

While specific instances of conduct may be the "most convincing" way of proving character, it also "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time," and for this reason should not be admissible. *United States v. Piche,* 981 F.2d 706, 713 (4th Cir. 1992) (citing Rule 405 Advisory Committee's Note.). Consequently, defendant should not be permitted to present evidence of specific instances in which he purportedly engaged in good acts, whatever those might be.

M.    PROHIBITION ON JURY NULLIFICATION

The government anticipates that defendant may attempt to advance a number of arguments that essentially call for jury nullification.  These defenses and arguments are irrelevant and not legal defenses that pose a distinct threat to encourage a jury to eschew their responsibility to apply the law.

1.    Evidence or Argument Blaming Medicare for Paying Claims Submitted by the Defendant or Failing to Discover the Fraud Should Be Excluded.

The defendant should be precluded from arguing, offering evidence, or eliciting on direct or cross-examination any "blame the victim defenses." This includes, but is not limited to, defenses insinuating that because Medicare paid the submitted claims, the defendant could have not defrauded Medicare or could not have known the claims were fraudulent. The Government

additionally submits that the defendant should be precluded from arguing that Medicare should have discovered the fraud scheme or that Medicare somehow "approved" the defendant's conduct by paying the claims. This evidence is irrelevant, would improperly place blame on the victims of fraud, and would mislead the jury.

As the government's burden is to demonstrate that a defendant's scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension, it is improper for a defendant to argue or postulate that the victim bears some degree of culpability for the commission of the offense. The Sixth Circuit has recognized that, "[a] scheme to defraud . . . 'must involve misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Bohn*, 281 F.App'x. 430, 440–441 (6th Cir. 2008) (quoting *United States v. Jamieson*, 427 F.3d 394, 415 (6th Cir. 2005); *Berent v. Kemper Corp.*, 973 F.2d 1291, 1294 (6th Cir. 1992)). The *Bohn* court went on, "[t]o be actionable, the misrepresentations must merely be 'worthy of reliance or credence.' This is not an exacting standard. As we noted in Jamieson, the purpose of the 'prudence and comprehension' requirement is to ensure that the scheme was 'at least minimally credible.'" *Id*. (internal citation omitted) (citing *Jamieson*, 427 F.3d at 415).

The Second Circuit has also recognized that, "the ordinary prudence standard therefore focuses on the violator, not the victim." *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004). In *Thomas*, the trial court properly barred the defense from cross-examining the victim regarding the "lack of caution he exercised during the fraud" and also declined "in instructing the jury in this regard." *Id*. at 240. The Second Circuit further held that, "[t]he 'unreasonable victim'1 argument misapprehends the function of the ordinary prudence standard." *Id*. at 242. In rejecting the notion that "the legality of a defendant's conduct depend[s] on his fortuitous choice

of a gullible victim," the *Thomas* court recognized that "[m]ost circuits that apply the ordinary prudence and comprehension standard have already rejected some form of the 'unreasonable victim argument." *Id*., 377 F.3d at 243–244 (citing *United States v. Benson*, 548 F.2d 42, 46 (2d Cir. 1977) and quoting *United States v. Pollack*, 534 F.2d 964, 971 (D.C. Cir. 1976)).[2]   The Second Circuit noted in affirming the defendant's conviction, "[i]f we held otherwise, we would be inviting 'con men to prey on people of below-average judgment or intelligence, who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection.'" *Id.*, 377 F.3d at 244 (quoting *United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996)). Therefore, established case law provides the authority to bar a defendant from blaming the victim's alleged error, negligence or carelessness as a viable defense to a federal fraud charge.

This evidence regarding the victim's conduct is not relevant to the defendant's guilt or innocence as a matter of law. Courts in this circuit and in other circuits have "routinely rejected the 'blame the victim' argument in the criminal fraud context." *United States v. Judd*, No. CR 21- 20600, 2023 WL 3294117 at *3 (E.D. Mich. May 5, 2023). Such evidence is irrelevant and therefore precluded. *Id*. The defendant cannot shift the blame to the victim in this case. It is not a defense that Medicare should have discovered the fraud and should not have paid the claims. "Blaming Medicare in a healthcare fraud case for failing to notify or warn a defendant of billing issues to prove a lack of requisite knowledge on defendant's part appears to be akin to advancing the 'ignorance of the law' defense, which is nonexistent." *Id*. at *2. In *Judd,* this was especially

---

[2] The *Thomas* court found concurrence with numerous other circuits in rejecting the proposition that a victim's purported negligence or carelessness in discovering the fraud constitutes a defense to criminal conduct. *United States v. Gray*, 367 F.3d 1263, 1269–1271 (11th Cir. 2004), *United States v. Drake*, 932 F.2d 861, 864 (10th Cir. 1991), *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) and *Linden v. United States*, 254 F.2d 560, 567–68 (4th Cir. 1958).

true when the defendant had been practicing for years and could have sought guidance on whether or not his billing practices were legal. The defendant in this case had similar opportunities. It is irrelevant that Medicare continued to pay the submitted claims and did not discover the fraud. These defenses are commonly rejected as irrelevant and similar defenses should be precluded here.

In addition to being irrelevant, evidence concerning Medicare's conduct related to discovering the frauds or paying fraudulent claims in connection with orders the defendant signed would be unduly prejudicial under Rule 403 and should be excluded. Allowing the defendant to argue that Medicare should not have paid the claims or should have discovered the fraud sooner would mislead the jury. It would create the erroneous impression that the jury would need to find that Medicare could not have discovered the fraud in order to find the defendant guilty. This is not necessary under the law and would be misleading. The evidence would detract from the other, relevant evidence of the defendant's conduct and would improperly focus the trial on the victim's conduct.

###### 2.     Commenting on Federal Resources

Defendant should likewise be precluded from arguing or introducing evidence concerning the volume, nature, or timing of discovery and argument or evidence regarding the use of federal resources in this case. This evidence would be irrelevant and unduly prejudicial. Fed. R. Evid. 401, 402, 403. Such argument or testimony creates an undue risk that the jury will be diverted "from its duty to decide the case on the evidence" and to apply the law. *See United States v. Young*, 470 U.S.1, 7-10 (1985). Instead, such arguments and testimony invite the jury to improperly consider its feelings towards the government and the government's decision making about how to allocate resources.

3.     Potential Penalties or Consequences of a Guilty Verdict

The Defendant may also seek to inform the jury what penalties he would face upon conviction, or that he has already suffered enough personal and professional consequences to excuse his criminal actions. The Court should prohibit the defendant from raising this type of argument or suggestion during trial.

One of the most well-established principles regarding criminal trials in the United States is that "[u]nless juries have roles in sentencing, such as in capital sentencing proceedings, juries should be instructed not to consider defendants' possible sentences during deliberation." *See United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996). *See also* Sixth Circuit Pattern Jury Instructions § 8.05(2) ("[i]t would violate your oaths as jurors to even consider the possible punishment in deciding your verdict."). As such, the Court should prohibit the Defendants from raising argument or suggestion regarding the possible penalties upon conviction.

For the same reasons, the defendant should also be prohibited from arguing that he has already faced enough negative personal or professional consequences for his criminal actions. This evidence would be irrelevant and cause improper jury nullification. The defendant has already been indicted in this case. The jury was not involved in the indictment against him and this type of argument would have no relevance to whether or not the defendant committed the crimes charged in the indictment, and would only function as a backdoor to jury nullification. Jury nullification is improper because "although jurors may indeed have the power to ignore the law, their duty is to apply the law as interpreted by the court and they should be so instructed." *U.S. v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983). The jury should not be encouraged to stray from the law that the court instructs. Evidence or argument concerning the indictment's effect on the defendant would encourage them to do as much and should be precluded. Thus, the Court should prohibit the defendants from presenting any argument or evidence about the possible

penalties upon conviction, or about the personal and professional consequences that he has already faced.

### N.    RULE 608 AND THE LIMITS OF IMPEACHMENT

A defendant's right to confront the witnesses against him through cross-examination is not absolute. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits upon such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679.  The government intends to present the testimony of several civilian witnesses in its case in chief, some of whom have convictions over fifteen years ago or have been merely accused of crimes without any further actions.  The government seeks an order from this Court preventing defense counsel from attempting to impeach witnesses on arrests and crimes for which they were not convicted.

Under Federal Rule of Evidence 609(a), "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year," and "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."  *United States v. Morrow*, 977 F.2d 222, 227 (6th Cir. 1992).  Arrests are not convictions.  Dismissed charges are not convictions.  Pending, unresolved cases are not convictions.  Acquittals are not convictions.  The underlying factual basis for a prior conviction is generally not a proper subject for impeachment under Rule 609. *See United States v. Lopez-Medina*, 596 F.3d 716, 737-38 (10th Cir. 2010); *United States v. Dansker*, 537 F.2d 40, 59-60 (3d Cir. 1976).

Unless there is some other articulable, good faith basis for attempting to impeach a witness about prior arrests, dismissed charges, pending unresolved charges, acquittals, non-qualifying convictions, or underlying factual basis, no witness should be cross-examined in any manner about such subjects.  The United States hereby requests an order from this Court directing that Rule 609 should be followed in cross-examining witnesses.  Sustained objections in the presence of the jury during trial are a much less effective means of honoring Rule 609 than is compliance with the rule before an improper question is asked.  Additionally, the provisions of Rule 608 should prevent improper cross-examination of certain government witnesses who have never been arrested or charged with any crimes.

O.     RULE 613 AND IMPROPER IMPEACHMENT WITH ANOTHER'S STATEMENT

The Court should prohibit improper impeachment of witnesses using the written statement of another individual.  Simply put, a witness cannot be impeached with someone else's statement.  *See United States v. Carpenter*, 819 F.3d 880, 886 (6th Cir. 2016), *rev'd and remanded on other grounds*, 138 S. Ct. 2206 (2018); *United States v. Hassan*, 552 Fed App'x. 527, 532 (6th Cir. 2014); *United States v. Bao*, 189 F.3d 860, 866 (9th Cir. 1999) ("Only the declarant of the prior inconsistent statement, not another witness, may be impeached with the statement"); *United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988) ("witnesses are not impeached by prior inconsistent statements of other witnesses, but they their own prior inconsistent statements"); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995)("Whereas an inconsistent statement by a testifying witness can be used to impeach that witness's credibility, an inconsistent account by another source is offered to show an alternative view of the truth.").

Although not required under the *Jencks* Act, the government will provide numerous memoranda of interviews (MOIs), prepared by federal special agents, for the government's trial

witnesses in its disclosures to defense prior to the witnesses testifying.  In this circumstance, the defense should be limited to using these MOIs consistent with the law and the rules of evidence.  A third party's notes about a person's statements are not tantamount to a person's actual statements and are therefore inadmissible as a statement of the witness unless it was adopted.  *See United States v. Schoenborn*, 4 F.3d 1424, 1427 (7th Cir. 1993) (explaining that a third party's characterization of a statement is not the same as an actual prior statement, unless the witness subscribed to that characterization); *United States v. Wimberly*, 60 F.3d 281, 286 (7th Cir. 1995) (explaining that a witness adopted a statement when she read an agent's report, made corrections, and signed the document); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) ((holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302").

As such, the Court should limit cross examination to the extent a party seeks to impeach a witness with the written statement of another.  In particular, the defense must be precluded from introducing the contents of the MOIs to impeach witnesses on the basis of inconsistent statements because the MOIs are not the statements of the witnesses themselves.[3]  Moreover, they must be precluded from publishing the contents of the MOIs to the jury, or otherwise suggesting to the jury that the 301 is a statement of the witness.  To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo v. United States*, 360 U.S. 343 (1959), holding that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."  360 U.S. at 350.

---

[3] Except, of course, if the witness is the Special Agent who prepared the MOI and the MOI concerns the subject matter of his testimony.

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an MOI.[4]  However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the MOI as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination."). Moreover, the defense may not use the MOI in a way that suggests to the jury that the MOI is a statement of the witness.  *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a MOI during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the MOI  and given the opportunity to adopt or reject it as a statement).

P.    GOVERNMENT WITNESS TESTIFYING PURSUANT TO A PLEA AGREEMENT

The government anticipates presenting the testimony of an individual who has been criminally charged with offenses related to the instant matter.  This individual has pled guilty pursuant to a plea agreement with the United States.  The government anticipates that this witness will testify at trial as to their role in the conspiracy.

The Sixth Circuit Court of Appeals has previously ruled that, "a guilty plea of a codefendant may not be received as substantive evidence of a codefendant's guilt, but may properly be considered as evidence of a witness' credibility."  *United States v. Thornton*, 609 F.3d 373, 377-78 (6th Cir. 2010); *United States v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986) (*citing United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981)).  Moreover, "under proper

---

[4] Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh the witness's recollection by showing the witness the MOI, but only if the defense does so in a manner that does not imply that the 302 is the witness's own statement.

instruction, evidence of a guilty plea may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe." *Id*. The Sixth Circuit has explained that a plea agreement may be interpreted as either helping or hurting a witness' credibility, so that introducing the entire agreement is appropriate to permit the jury, "to consider fully the possible conflicting motivations underlying the witness' testimony." *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000) (*quoting United States v. Townsend*, 796 F.2d 158, 163 (6th Cir. 1986)). In addition, "[t]he prosecutor may ... wish to place the plea before the jury so as to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness has something to hide." *Christian*, 786 F.2d at 214.

Here, the government anticipates that in addition to testimony concerning the witness' role in the conspiracy, the witness will also testify regarding their understanding of their plea agreement. The government is entitled to elicit this information from its witness for the jury to assess the witness's credibility. The Government, of course, acknowledges that the plea agreement is not substantive evidence of guilt of these defendants and that a limiting instruction concerning the proper use of such testimony would be appropriate, if requested by the defense.

## IV. <u>MISCELLANEOUS ISSUES</u>

### A. <u>EXPECTED LENGTH OF TRIAL/NUMBER OF WITNESSES</u>

The government anticipates the government's presentation of evidence at trial will last between five to seven business days and that the case should be submitted to the jury for deliberation within ten days. The government anticipates calling approximately 25 witnesses that will include a mix of expert witnesses, percipient witnesses including Medicare beneficiaries, and law enforcement personnel.

B.    MUTUAL AGREEMENT TO LIVE VIDEO TESTIMONY

Counsel for both sides have agreed to permit video testimony for certain beneficiaries, including D.R., G.H., and A.S., as these individuals live outside the state of Ohio and, as Medicare beneficiaries, face a variety of ailments and physical conditions that would make their in-person testimony overly burdensome.   The government and counsel kindly ask permission of the Court to use its video system to permit a two-way, live testimony with these remote witnesses in which the parties and the witness will be able to see and interact with one another, and further for the jury to adequately observe the witness during testimony.

C.    PRESENCE OF GOVERNMENT AGENTS AT TRIAL

The Government anticipates the Court ordering a separation of witnesses pursuant to Federal Rule of Evidence 615.  Federal Rule of Evidence 615(b) specifically excludes from the sequestration order "an officer or employee of a party which is not a natural person designated as its representative by its attorney."  The Government anticipates designating HHS-OIG Special Agent Jeremy Buening, and FBI Special Agent Thomas Agee, the case agents, as the Government's representatives present at counsel table.

Federal Rule of Evidence 615(c) provides an additional exception to the court's sequestration order for witnesses "whose presence is shown by a party to be essential to the presentation of the party's cause." *See United States v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991). The rule, therefore, allows the Government to designate representatives in addition to the case agent for certain prosecutions that are sufficiently complex so that "the aid of more than one law enforcement officer is needed to sort through extensive, technical evidence, and to help 'map out strategy.'"  *United States v. Phibbs*, 999 F.2d 1053, 1072 (6th Cir. 1993). "The 'essential' witness exception set out in Rule 615(3) 'contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management

of the litigation.'" *Id.* at 1073 (quoting Advisory Committee Notes to Fed.R.Evid. 615).  Here, the government is presenting a case spanning several years, covering hundreds of Medicare orders, financial documents and other evidence.  The government anticipates presenting a multitude of trial exhibits through its more than 25 witnesses. The government also anticipates that Special Agent Agee will serve to operate the government's electronic evidence presentation software to ensure smooth presentation of the case to the jury.   Accordingly, given the complexity of this matter and need to present the case efficiently to the jury, the government requests that more than one government representative be permitted to sit at counsel's table.

      D.      <u>STIPULATIONS</u>

Counsel for the both sides have agreed to stipulate to the following:

1.      The Medicare Program is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b), which affects interstate commerce.

2.      Orders submitted by Timothy Sutton through the Realtime portal were submitted electronically in interstate wire communications.

3.      Claims to Medicare were submitted electronically in interstate wire communications.

4.      Timothy Sutton used the following email addresses:

      a. occdoctim@gmail.com

      b. timothyjsutton@gmail.com